# Illinois Official Reports

## Appellate Court

---

**Illinois Ass'n of Realtors v. Stermer, 2014 IL App (4th) 130079**

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS ASSOCIATION OF REALTORS, Plaintiff-Appellant, v. JEROME STERMER, Acting Director, The Governor's Office of Management and Budget; MANUEL FLORES, Acting Secretary, The Department of Financial and Professional Regulation; MALCOLM WEEMS, Acting Director, The Department of Central Management Services, The State of Illinois; DAN RUTHERFORD, Treasurer, The State of Illinois; JUDY BAAR TOPINKA, Comptroller, The State of Illinois; and PATRICK QUINN, Governor, The State of Illinois, in All Their Official Capacities, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0079 |
| Filed | February 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint alleging that the 2007 Budget Implementation Act was unconstitutional because it transferred monies from the Real Estate License Administration Fund into the state's General Revenue Fund was properly dismissed due to plaintiff's lack of standing, since plaintiff's allegations that the transfer of the monies to the General Revenue Fund violated the uniformity clause of the Illinois Constitution and the due process clauses of the Illinois and United States Constitutions failed to show a direct injury to any legally cognizable interest of plaintiff or its members traceable to defendants' actions, especially when plaintiff is not an object of the challenged action. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 06-MR-317; the Hon. Leo Zappa, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | James G. Fahey (argued) and Stephen J. Bochenek, both of Sorling Northrup, of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brian F. Barov (argued), Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Justices Pope and Turner concurred in the judgment and opinion. |

## OPINION

¶ 1        In June 2006, plaintiff, Illinois Association of Realtors, filed a complaint asserting the FY2007 Budget Implementation (Finance) Act (2007 Budget Act) (Pub. Act 94-839 (eff. June 6, 2006)) was unconstitutional because it transferred monies from the Real Estate License Administration Fund (Administration Fund) into the state's General Revenue Fund. In June 2012, defendants, Jerome Stermer, Manuel Flores, Malcolm Weems, Dan Rutherford, Judy Baar Topinka, and Patrick Quinn, filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). (Plaintiff originally sued the previous officeholders and the current officeholders are substituted by operation of law. 735 ILCS 5/2-1008(d) (West 2012).) In January 2013, the trial court dismissed plaintiff's second amended complaint.

¶ 2        On appeal, plaintiff argues the trial court erred by granting defendants' motion to dismiss. Plaintiff asserts it has standing, on its own behalf and the behalf of its members, because it pays regulatory fees into the Administration Fund. Additionally, plaintiff argues (1) the "excessive" regulatory fees real estate professionals are charged, combined with their use as "taxes," violate the uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, § 2); (2) the "excessive" regulatory fees, combined with their use as "taxes," violate the due process clauses of the Illinois and United States Constitutions; and (3) it is entitled to *mandamus* because section 25-20 of the Real Estate License Act of 2000 (License Act) (225 ILCS 454/25-20 (West 2006)) imposes a ministerial duty upon the Department of Financial and Professional Regulation (Department) to hire a specified number of investigators and prosecutors. We conclude plaintiff lacks standing and affirm.

## I. BACKGROUND

¶ 4    Plaintiff is a trade association for real estate professionals. It is located in Springfield, Illinois, and has approximately 40,000 members in Illinois. Its membership consists of real estate professionals who are licensed and regulated by the Department. Real estate professionals pay application and licensing fees to the Department. See 225 ILCS 454/5-65 (West 2006); 68 Ill. Adm. Code 1450.130 (2011). Plaintiff is licensed to operate a prelicense school and a continuing education school and pays fees for those licenses. See 68 Ill. Adm. Code 1450.130(g), (h) (2011).

¶ 5    In June 2006, plaintiff filed a complaint seeking declaratory judgment, injunction, and *mandamus*. Plaintiff originally sued John Filan, Dean Martinez, Paul J. Campbell, Judy Baar Topinka, Daniel W. Hayes, and Rod W. Blagojevich. Those parties have ceased to hold the public office they held at the time of plaintiff's complaint. The current officeholders are substituted by operation of law. 735 ILCS 5/2-1008(d) (West 2012). Plaintiff alleged the 2007 Budget Act improperly removed monies from the Administration Fund and transferred it into the General Revenue Fund and other state funds. The same month, the trial court entered a stipulated order whereby defendants agreed to not (1) transfer money from the Administration Fund and (2) use money from the fund for any purpose other than those specified in the License Act, without first providing plaintiff with written notice of defendants' intention to withdraw the money for purposes other than those specified in the License Act. In October 2006, defendants filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2006)). The case sat dormant for several years.

¶ 6    In June 2012, plaintiff filed a four-count second amended complaint. Generally, plaintiff asserted the 2007 Budget Act was unconstitutional because it transferred monies from the Administration Fund into the General Revenue Fund. Plaintiff sought to prohibit all future removal of money from the Administration Fund to the General Revenue Fund, or other state funds, and "to pay only their respective share of the general administrative costs attributable to the regulation of their profession." Plaintiff alleged, beginning in the 2003 fiscal year, the State of Illinois, under defendants' direction, began a policy of transferring special funds into the General Revenue Fund "in an attempt to decrease the annual budget deficit." Plaintiff contended defendants (1) conducted "fund sweeps" from the Administration Fund and removed (a) $250,000 pursuant to the 2003 fiscal year budget, (b) $750,000 pursuant to the 2004 fiscal year budget, and (c) $1.5 million pursuant to the 2006 fiscal year budget; (2) intended to remove $5 million pursuant to the 2007 Budget Act; (3) conducted "dedicated fund removals" and removed (a) $424,000 in the 2004 fiscal year, and (b) at least $696,172 in the 2005 fiscal year; and (4) performed "director transfers" removing (a) $3,825 in the 2004 fiscal year, and (b) $242,118 in the 2005 fiscal year. Plaintiff alleged defendants made a total of 16 transfers from the Administration Fund after June 2006. These were transfers to the Real Estate Research and Education Fund, the Professions Indirect Cost Fund, the Audit Expense Fund, and the Real Estate Recovery Fund. Transfers "beyond these legitimate indirect costs" were unconstitutional. Plaintiff also alleged the Illinois Senate "publically declared its plan" in 2012 to sweep approximately $24 million from the Administration Fund. This "equat[es] to an

- 3 -

additional tax of $500 or more assessed against every member of the [Illinois Association of Realtors] for the sole purpose of paying general revenue expenses."

¶ 7      Plaintiff alleged (1) fees paid into the Administration Fund "are dedicated to be used to pay for any ordinary administrative and operational expenses" of the Department, and (2) "[r]egulatory fees are compensation for services rendered by the State and should be based on the amount needed or required to regulate the industry consistent with the [License Act]." Plaintiff alleged all licensing fees were raised effective January 22, 2014, "immediately before the proposed [f]und [s]weeps." Plaintiff provided the percentage of the increases but not the amount of the increased fees. Plaintiff asserted "[d]espite the[ ] increasing transfers, the Defendants have systematically refused to hire a sufficient number of investigators, prosecutors and related staff to carry out the purposes of the Real Estate License Act as required under [section] 25-20 of the [License] Act [(225 ILCS 454/25-20 (West 2012))]."

¶ 8      In count I, plaintiff asserted the 2007 Budget Act violated the uniformity clause of the Illinois Constitution because the regulatory fees imposed on licensees constitute a tax. According to plaintiff, the regulatory fees constitute a tax because they are "deliberately set in excess of the amount needed to compensate the State for the cost of providing the regulation or rendering of the service for which the [r]egulatory [f]ees were purportedly charged." Plaintiff asserted the imposition of the regulatory fee with the "deliberate intent of raising revenue in excess of the costs of providing regulation" and depositing "excess revenue" into the General Revenue Fund "for the purpose of balancing the State's budget" creates a disparity between those who must pay the regulatory fees and those who do not have to pay the excess fees. In count II, plaintiff asserted the 2007 Budget Act violated the due process clause of the Illinois Constitution. In count III, plaintiff asserted the 2007 Budget Act violated the due process clause of the United States Constitution. In count IV, plaintiff requested an order of *mandamus* to compel defendants to comply with the License Act and "[p]rovide an accounting of the amount required to sufficiently regulate the profession and meet its statutory obligations under the Real Estate License Act."

¶ 9      In June 2012, defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)). Defendants asserted plaintiff lacked standing and plaintiff's claims were insufficient in law. In July 2012, plaintiff filed a response to defendants' motion to dismiss. Plaintiff asserted "[u]pon information and belief, there has been a surplus of money at the end of each fiscal year in the [Administration] Fund since at least 2003," and "[a]fter collecting the newly-increased regulatory fees, the State had even a greater surplus of money in the [Administration] Fund." Plaintiff did not seek leave to amend its complaint.

¶ 10     At the October 2012 hearing on defendants' motion to dismiss, plaintiff's counsel framed the claim as asking "can the State, through the guise of charging the regulatory fee, charge substantially in excess of it with the purpose and intent to pay off general revenue debt?" During the hearing, the following exchanged occurred:

> "THE COURT: Okay. Here's a question: What–if they have the right to use–to sweep the funds and put it in the general revenue, under your theory, when is enough enough and how much can they use and how much can't they use?

[PLAINTIFF'S COUNSEL]: Your Honor, there is–in fact, there's the [*V*]*alstad* case which they cite out of [the] Fourth District, and there was some excess in that case. We're not saying they can't sweep out excess because, under the words of Justice Steigmann–and I say that with a great deal of respect–but we all kind of benefit from that. Now, there's something substantially different between some excess and $32 million. That's a plan."

¶ 11 In January 2013, the trial court dismissed plaintiff's second amended complaint. The court found plaintiff lacked standing because it could not demonstrate a special injury as a result of the challenged fund transfer. The court found the fees paid by licensees were "a condition of engaging in the real estate business in Illinois" and were "not dependent on the amount of money in the [Administration] Fund." No provision in the 2007 Budget Act or the License Act required or authorized a refund of excess fees held in the Administration Fund or a provision holding licensees liable for shortfalls. Additionally, the court concluded the 2007 Budget Act did not violate (1) the uniformity clause because it did not raise revenue but merely authorized transfers of public funds, and (2) the due process clauses of the Illinois and United States Constitutions because it was rationally related to maintaining state finances. The court found "section 25-20 [of the License Act] must be interpreted as directory, intending to merely give guidance to the Department as to the personnel necessary for regulation" and concluded plaintiff was not entitled to *mandamus*.

¶ 12 This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14 Plaintiff argues the trial court erred by granting defendants' motion to dismiss. Plaintiff asserts it has standing, on its own behalf and on behalf of its members, because it pays regulatory fees into the Administration Fund. Additionally, plaintiff argues (1) the "excessive" regulatory fees charged to real estate professionals, combined with their use as "taxes," violate the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2); (2) the "excessive" regulatory fees, combined with their use as "taxes," violate the due process clauses of the Illinois and United States Constitutions; and (3) it is entitled to *mandamus* because section 25-20 of the License Act (225 ILCS 454/25-20 (West 2006)) imposes a ministerial duty upon the Department to hire a specified number of investigators and prosecutors. We conclude plaintiff does not have standing and affirm.

¶ 15                             A. Standard of Review

¶ 16 Defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)). Section 2-619.1 of the Code allows a party to file a combined section 2-615 and section 2-619 motion to dismiss. 735 ILCS 5/2-619.1 (West 2012). A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint. *Carr v. Koch*, 2012 IL 113414, ¶ 27, 981 N.E.2d 326. A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. *Carr*, 2012 IL 113414, ¶ 27, 981 N.E.2d 326. This court reviews a trial court's grant of a

motion to dismiss under sections 2-615 and 2-619 *de novo*. *Carr*, 2012 IL 113414, ¶ 27, 981 N.E.2d 326. We review the trial court's finding plaintiff lacked standing *de novo*. *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1101, 943 N.E.2d 1157, 1161 (2011).

¶ 17                                    B. The State Finance Act and the License Act

¶ 18       Under the State Finance Act, all monies belonging to or for use of the State of Illinois are held either in the General Revenue Fund or a special fund. See 30 ILCS 105/4, 5 (West 2006). The Administration Fund is a special fund. 225 ILCS 454/25-30 (West 2006). The General Assembly has amended the State Finance Act to authorize transfers from special funds into the General Revenue Fund. See 30 ILCS 105/8.41, 8.42, 8.43, 8.44 (West 2006). In the 2007 Budget Act, the General Assembly authorized approximately $200 million in transfers from various special funds into the General Revenue Fund for the 2007 fiscal year. 30 ILCS 105/8.45 (West 2006). This included a $5 million transfer from the Administration Fund into the General Revenue Fund. 30 ILCS 105/8.45 (West 2006).

¶ 19       The License Act's purpose "is to evaluate the competency of persons engaged in the real estate business and to regulate this business for the protection of the public." 225 ILCS 454/1-5 (West 2006). The License Act requires applicants and licensees to pay a fee as part of the application and renewal process. See 225 ILCS 454/5-25(c) (West 2006); 225 ILCS 454/5-50(a) (West 2006) (renewal fee). Section 5-65 of the License Act authorizes the Department to determine the amount of fees paid by applicants and licensees to cover the Department's "reasonable costs *** in administering and enforcing the [License Act's] provisions." 225 ILCS 454/5-65 (West 2006). Plaintiff has not provided the fee amounts applicable at the time of its complaint. We note the current application fee for a broker license is $125 and the renewal fee is $75 per year. 68 Ill. Adm. Code 1450.130(c) (2011).

¶ 20       Section 25-30 of the License Act provides all fees received by the Department under the Act "shall be deposited in the Real Estate License Administration Fund." 225 ILCS 454/25-30 (West 2006). Money deposited in the Administration Fund "shall be appropriated to [the Department] for expenses of [the Department] *** in the administration of this Act and for the administration of any Act administered by [the Department] providing revenue to this Fund." 225 ILCS 454/25-30 (West 2006). Money is annually transferred from the Administration Fund to the Real Estate Research and Education Fund. 225 ILCS 454/25-25 (West 2006). Money deposited in the Real Estate Research and Education Fund "may be used for research and education at state institutions of higher education or other organizations for research and the advancement of education in the real estate industry." 225 ILCS 454/25-25 (West 2006).

¶ 21       Section 25-20 of the License Act provides, "[The Department] shall employ sufficient staff to carry out the provisions of this Act." 225 ILCS 454/25-20 (West 2006). We note section 25-20 was amended, effective December 31, 2009, to state: "The Department shall employ a minimum of one investigator per 10,000 licensees and one prosecutor per 20,000 licensees in order to have sufficient staff to perform the Department's obligations under the Act." 225 ILCS 454/25-20 (West 2012) (as amended by Pub. Act 96-856, § 20 (eff. Dec. 31, 2009)).

## C. Plaintiff's Standing

Plaintiff asserts it has standing because (1) the fees it and its members pay (a) are "taxes," and (b) were increased to allow for the fund transfer to the General Revenue Fund; and (2) the Department does not have a sufficient number of staff to regulate the real estate profession. It contends the fees are "taxes" because the Administration Fund was "converted" into a source of revenue for the General Revenue Fund. Plaintiff argues the fund transfers cause the fees to be higher than "would otherwise be required to actually regulate the profession" and they would be "substantially lower" if defendants "refrained from continually sweeping large amounts of money from the fund in order to support their budgets." Plaintiff also argues "if the [d]efendants actually used the money in the fund to pay for regulation, oversight and administration of the real estate profession, then the ongoing injury would cease because there would be an appropriate number of investigators, prosecutors, and other regulatory personnel." We conclude plaintiff's allegations the fund transfers caused higher regulatory fees and a lack of sufficient Department personnel are insufficient to confer standing.

### 1. *Standing, Generally*

The standing doctrine ensures issues are raised by parties with a real interest in the controversy's outcome. *Carr*, 2012 IL 113414, ¶ 28, 981 N.E.2d 326. It allows courts to consider only disputes which are truly adversarial and capable of resolution by judicial decision. *Barber*, 406 Ill. App. 3d at 1101, 943 N.E.2d at 1161 (quoting *Martini v. Netsch*, 272 Ill. App. 3d 693, 695, 650 N.E.2d 668, 669 (1995)). It distinguishes between concrete disputes and disputes which are "abstract or hypothetical" (*Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 452, 389 N.E.2d 529, 532 (1979)) or generalized grievances (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575 (1988)).

"In order to have standing to challenge the constitutionality of a statute, a party must have sustained, or be in immediate danger of sustaining, a direct injury as a result of the enforcement of the challenged statute. [Citation.] 'The claimed injury must be (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief.' " *Carr*, 2012 IL 113414, ¶ 28, 981 N.E.2d 326 (quoting *Wexler v. The Wirtz Corp.*, 211 Ill. 2d 18, 23, 809 N.E.2d 1240, 1243 (2004)). An association may have standing both in its own right and on behalf of its members. *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 46, 828 N.E.2d 1104, 1111 (2005). " '[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *International Union*, 215 Ill. 2d at 47, 828 N.E.2d at 1111 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); see also 805 ILCS 105/103.10(b) (West 2012). The issue of plaintiff's standing is determined from the allegations contained in the complaint. *Barber*, 406 Ill. App. 3d at 1101, 943 N.E.2d at 1161.

## 2. Plaintiff's Standing as a Taxpayer

¶ 28 We first consider plaintiff's argument it has standing under the taxpayer-standing doctrine. This is plaintiff's primary argument it has standing to challenge the 2007 Budget Act. In considering plaintiff's taxpayer-standing argument, we express no opinion on its characterization the fee is a "tax" because the fees are being transferred to the General Revenue Fund. See Black's Law Dictionary 1496 (8th ed. 2004) (defining "tax" as "[a] monetary charge imposed by the government on persons, entities, transactions, or property to yield public revenue"). Plaintiff's argument suffers more basic flaws.

¶ 29 Taxpayer standing is a narrow doctrine permitting a taxpayer the ability to challenge the misappropriation of public funds. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 494, 831 N.E.2d 544, 550 (2005) (quoting *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160, 139 N.E.2d 227, 229 (1956)). The taxpayer-standing doctrine does not permit courts to engage in policy judgments about how revenues or savings should be allocated; such judgments are reserved to the legislature. See generally *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344-45 (2006) ("A taxpayer plaintiff has no right to insist that the government dispose of any increased revenue it might experience as a result of his suit by decreasing his tax liability or bolstering programs that benefit him."). "The key to taxpayer standing is the plaintiff's liability to replenish public revenues depleted by an allegedly unlawful governmental action." *Barber*, 406 Ill. App. 3d at 1102, 943 N.E.2d at 1161. Taxpayer standing is based "upon the taxpayers' ownership of [public] funds and their liability to replenish the public treasury for the deficiency caused by such misappropriation. The misuse of these funds for illegal or unconstitutional purposes is a damage which entitles them to sue." *Barco Manufacturing*, 10 Ill. 2d at 160, 139 N.E.2d at 229. "The illegal expenditure of general public funds may always be said to involve a special injury to the taxpayer not suffered by the public at large. However, when the expenditure involved is from a [special] fund, the petitioner must show a special injury not common to the public generally." *Barco Manufacturing*, 10 Ill. 2d at 161, 139 N.E.2d at 230. This court recently held, "[a] plaintiff whose claims rest on his or her standing as a taxpayer must allege [an] equitable ownership of funds depleted by misappropriation and his or her liability to replenish them in the complaint; otherwise, the complaint is 'fatally defective.'" *Barber*, 406 Ill. App. 3d at 1102, 943 N.E.2d at 1161 (quoting *Golden v. City of Flora*, 408 Ill. 129, 131, 96 N.E.2d 506, 508 (1951)).

¶ 30 Plaintiff does not challenge the use of Administration Fund monies for an illegal or unconstitutional expenditure but rather claims the Administration Fund is being misused as a source for general revenue funds. As plaintiff's claim is about misuse of a special fund, it must show a special injury. As discussed below, it does not. The fact is, licensees pay the fees as a condition of being licensed to conduct business in Illinois; those fees go into the Administration Fund, which is a public fund; and the legislature can transfer money from the Administration Fund. See *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 25, 957 N.E.2d 876 ("It has long been recognized that the legislature has the authority to order monies collected in one fund be transferred into a different fund."). Although plaintiff's contention the Administration Fund must be used for a particular purpose misunderstands the legislature's authority to control public funds, it has a more basic problem. It has not met the requirements

of taxpayer standing. It has not alleged equitable ownership in the Administration Fund. Our supreme court recently rejected such an argument and held fees charged for motorcycle registration and licensing were state revenue and the proportion allocated to a special fund was also public money. *A.B.A.T.E.*, 2011 IL 110611, ¶ 29, 957 N.E.2d 876. Plaintiff asserts it is responsible for replenishing public revenues because "regulated real estate licensees are required to continually pay fees to replenish a fund that Defendants are exhausting." Plaintiff has not provided a provision in the 2007 Budget Act requiring increased fees, or a provision in the License Act requiring fees be increased to maintain the Administration Fund. See *A.B.A.T.E.*, 2011 IL 110611, ¶ 29, 957 N.E.2d 876. Plaintiff and other licensees pay fees into the Administration Fund as a condition of being licensed to conduct real estate business in Illinois. This is a requirement to pay licensing fees, not to restore amounts transferred out of the Administration Fund. Plaintiff's allegations it has taxpayer standing to challenge the fund transfers are defective and it must establish another ground for standing.

¶ 31                           3. Plaintiff's Individual and Associational Standing

¶ 32     Plaintiff contends it has standing because the fund transfers caused a depletion of the Administration Fund which, in turn, necessitated the fee increase, causing injury to plaintiff and its members. Plaintiff argues "[g]iven the comparatively low percentage of the [Administration] Fund that the [d]efendants typically allow to be spent on regulation, oversight and administration of the real estate profession, a reasonable inference is that the rates are artificially inflated so as to provide this reliable source of general revenue on a continuing basis." It also contends it is injured because the Department does not have adequate staff to perform its regulatory responsibilities. We consider whether these alleged injuries confer plaintiff standing.

¶ 33     Illinois is a fact-pleading jurisdiction (*Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006)) and plaintiff's allegations must demonstrate a direct injury to a legally cognizable interest, of it or its members, traceable to defendants' actions (*Illinois Gamefowl Breeders*, 75 Ill. 2d at 451, 389 N.E.2d at 531). " '[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish.' " *Summers v. Earth Island Institute*, 555 U.S. 488, 493-94 (2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). This is the challenge plaintiff faces. It complains about a fund transfer from the Administration Fund but this transfer did not directly affect plaintiff or its members. Plaintiff alleges the fund transfer caused depletion in the Administration Fund, which in turn caused the fee increase. In other words, plaintiff alleges it is *indirectly* affected by the fund transfers. The difficulty of demonstrating the fund transfers injure plaintiff is further compounded by plaintiff's attempts to connect the General Assembly's actions with the Department's. It also asserts the Department and the General Assembly conspired to use the Administration Fund as a source of general revenue. This too is a difficult argument. See *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004) (observing it is difficult to establish the two parties acted in concert to commit the unlawful act in a civil-conspiracy action). Plaintiff's obligation is to

provide factual allegations demonstrating its alleged injuries are traceable to defendants' actions. It has not met this obligation.

¶ 34		Plaintiff, its members, and all other licensees are required to pay a fee as a condition of being licensed to conduct activities regulated by the License Act. See 225 ILCS 454/5-25(c), 5-50(a), 30-5, 30-20 (West 2006). Pursuant to section 5-65 of the License Act, the Department has the discretion to determine the fee amount. 225 ILCS 454/5-65 (West 2006). The License Act provides the fees are to be sufficient to cover the Department's "reasonable costs" and "reasonable expenses" in conducting its responsibilities under the License Act. 225 ILCS 454/5-65 (West 2006). Temporarily putting aside the fact the Department has the discretion to determine the fee, plaintiff's second amended complaint fails to provide any factual allegations demonstrating the fees are connected to the Administration Fund. This is problematic because plaintiff asserts the fees are higher than they should be and the Department uses a "comparatively low percentage" of the Administration Fund for regulating licensees. The second amended complaint does not contain or provide an estimate of (1) the fees licensees paid before the 2004 increase, (2) the fees licensees paid after the 2004 increase (it provides a percentage increased but not the actual amount), (3) the total amount of fees paid by licensees in any given year, (4) the amount the fees would have been without the transfers, (5) what the Department spends to perform its statutory functions, (6) what is necessary for the Department to operate, or (7) the difference between what is raised by the fees and what the Department spends. Thus, no factual allegations support plaintiff's contention the fees are higher than they should be or connected to the Administration Fund, the very basis of its argument it is injured by the fund transfers. Further, plaintiff contends the fee was increased to assist the Administration Fund in being a source of general revenue but its complaint did not contain or provide an estimate of the amount in the Administration Fund in any given year. This is puzzling as plaintiff, in its response to defendants' motion to dismiss, asserted the Administration Fund had a "surplus" but then admitted, at the hearing on the motion, the General Assembly can transfer excess funds out of the Administration Fund. Plaintiff's failure to provide factual allegations about the Administration Fund's finances undermines its contention the fund is connected to the fee amount charged to licensees.

¶ 35		Plaintiff contends it "demonstrated in detail" how the fund transfers affected the fees. We do not agree. In its second amended complaint, plaintiff asserted the timing of the fee increase showed its connection to the fund transfer. However, plaintiff's allegations are about fee increases effective January 22, 2004. It is hard to understand how the 2007 fiscal year fund transfer affected a fee increase occurring several years before. Plaintiff's second amended complaint refers to previous fund transfers in an attempt to assert a pattern of fund transfers caused the fee increase. While this might arguably be "traceable" to defendants' actions, plaintiff has not alleged any of the previous fund transfers were wrongful and only complains about the 2007 fiscal year fund transfer. This is a major problem with plaintiff's allegations: it attempts to connect the actions of the General Assembly and the Department but alleges it was injured by actions taken by the Department years *before* the General Assembly authorized the fund transfer.

¶ 36    Putting these deficiencies aside, the supreme court recently considered a similar argument in *Carr* where the plaintiffs argued the state's education funding statute resulted in higher property taxes. *Carr*, 2012 IL 113414, ¶¶ 10-16, 981 N.E.2d 326. The supreme court reiterated "[t]he education funding statute is simply that: a funding statute. It is not a taxing statute." *Carr*, 2012 IL 113414, ¶ 32, 981 N.E.2d 326. School districts were not required to impose a certain local property tax rate in order to receive the statutorily determined amount of general state aid, and districts were not penalized or rewarded for taxing at, above, or below the statutorily assumed local property tax rate. *Carr*, 2012 IL 113414, ¶ 35, 981 N.E.2d 326. School districts received the determined amount of state aid "regardless of the local property tax rate actually imposed." *Carr*, 2012 IL 113414, ¶ 35, 981 N.E.2d 326. The court noted the school districts had the discretion to determine the actual rate of local property taxes. *Carr*, 2012 IL 113414, ¶ 35, 981 N.E.2d 326. In rejecting the plaintiff's arguments, the court stated "[a]lthough a school district might decide that more local property tax revenues are required in order to provide its students with a sufficient education to meet the [Illinois Learning Standards], that decision is left to the school district, and is not compelled or required by the education funding statute." *Carr*, 2012 IL 113414, ¶ 41, 981 N.E.2d 326. The supreme court concluded the plaintiffs' argument "that the imposition of the higher taxes is a direct result of the enforcement of the statute and is fairly traceable to defendants is too attenuated to confer standing." *Carr*, 2012 IL 113414, ¶ 37, 981 N.E.2d 326. While there are obvious differences with *Carr*, the instant case shares significant parallels.

¶ 37    The 2007 fiscal year fund transfers were enacted "to maintain the integrity of special funds and improve stability in the General Revenue Fund." 30 ILCS 105/8.45 (West 2006). As discussed above, the second amended complaint contains no factual allegations about the Administration Fund's finances, nor does it allege the fund could not absorb the transfer as authorized by the General Assembly. Moreover, the 2007 Budget Act did not set or address the fees authorized by the License Act. Compare *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 658, 837 N.E.2d 922, 926 (2005) (budget act imposed new fee and surcharge). The General Assembly vested the Department with the discretion to determine fees and plaintiff has not provided a provision in the 2007 Budget Act requiring increased fees or curtailing the Department's discretion to determine fees. The Department may consider increased fees are necessary to meet its responsibilities under the License Act but the 2007 Budget Act neither compels nor requires an increase. Plaintiff seemingly overlooks the fact the fee increase may have resulted from other factors such as inflation, fees charged by other states, or the Department's increased overhead costs. See generally *Valstad v. Cipriano*, 357 Ill. App. 3d 905, 917, 828 N.E.2d 854, 868 (2005). Further, plaintiff has not pleaded it is entitled to a refund of fees exceeding the Department's actual costs. For the same reasons, plaintiff's contention it suffers injury from "double sweeps" as a result of transfers from the Real Estate Research and Education Fund is insufficient to confer standing.

¶ 38    Plaintiff asserts it and its members have suffered an injury because the Department does not have adequate staff. Plaintiff's second amended complaint alleged the Department did not have a "sufficient" number of investigators and prosecutors. See 225 ILCS 454/25-20 (West 2006). We note the current version of section 25-20 of the License Act provides for a minimum

- 11 -

of one investigator per 10,000 licensees and one prosecutor per 20,000 licensees in order to have "sufficient staff." 225 ILCS 454/25-20 (West 2012). Again, plaintiff fails to provide factual allegations demonstrating it is injured by the Department's alleged failure to have "sufficient" staff. Plaintiff has not alleged the total number of licensees or the number of investigators and prosecutors on the Department's staff. Plaintiff has only provided its bare allegation the Department's staff is insufficient. Further, plaintiff does not provide factual allegations about how it or its members are injured by the Department's alleged failure to have sufficient staff. It makes no allegation such as delays in applications or renewals, untimely disciplinary proceedings, or inability of the Department to address misconduct in the real estate profession. Plaintiff only alleges a generalized failure to regulate the profession. This is not a distinct and palpable injury sufficient to confer standing. See generally *Lujan*, 504 U.S. at 562-67 (standing not established where challenger provided no specific facts it or its members would be directly affected by the alleged failure to regulate). Plaintiff has not shown an injury sufficient to confer standing to challenge the 2007 Budget Act.

¶ 39     We note in its reply brief, plaintiff asserted it suffered injury because defendants had grown more "brazen" in their attempts to transfer funds from the Administration Fund to other programs and referenced "recent actions" by the Illinois Senate. Plaintiff's second-amended complaint alleged the Illinois Senate, in 2012, "publically declared its plan to sweep" money out of the Administration Fund. (Plaintiff's counsel made reference to this at the June 2012 hearing in the trial court by noting "$32 million" in fund transfers was a "plan.") In its brief, plaintiff stated this plan was included in an amendment to Senate Bill 2365. Plaintiff's assertions suffer serious problems. Senate Bill 2365 did not become law. "Courts have no general power to consider proposed and uncompleted legislation to determine whether an act will be valid or invalid if enacted into law. After legislation has been completed, the courts, in determining the rights of litigants respecting personal, civil or property rights, may, and it is their duty to, refuse to enforce a statute which is invalid, but their jurisdiction is limited to the determination of such rights. They can neither direct the enactment of a law nor prevent its enactment on any ground whatever ***." *Spies v. Byers*, 287 Ill. 627, 631, 122 N.E. 841, 843 (1919); *Morawicz v. Hynes*, 401 Ill. App. 3d 142, 147, 929 N.E.2d 544, 549 (2010) ("Illinois courts cannot enjoin either the General Assembly from passing a bill or the Governor from acting upon it"); *Barco Manufacturing*, 10 Ill. 2d at 166, 139 N.E.2d at 232 ("[injunctive] relief will not be granted to allay unfounded fears or misapprehensions"). Plaintiff's assertion proposed legislation constitutes an injury is without merit.

¶ 40                              D. Plaintiff's Other Arguments
         Given our finding plaintiff does not have standing to bring the instant claim, we need not address plaintiff's additional arguments.

                                  III. CONCLUSION
¶ 41     We affirm the trial court's judgment.

¶ 42        Affirmed.