(No. 97022.—

# THE COUNTY OF COOK *ex rel.* ROBERT F. RIFKIN *et al.*, Appellants, v. BEAR STEARNS & COMPANY, INC., *et al.*, Appellees.

*Opinion filed June 3, 2005.*

Clinton A. Krislov and Jason P. Stiehl, of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Paul A. Castiglione, Patrick M. Blanchard and Julie Ann Sebastian, Assistant State's Attorneys, of counsel), for appellee County of Cook.

Eric H. Grush, of Chicago (A. Robert Pietrzak, Nicholas P. Crowell and Martin B. Jackson, of New York,

New York, of counsel), all of Sidley, Austin, Brown & Wood, L.L.P., for appellee Bear Stearns & Co.

Stanley J. Parzen and James C. Schroeder, of Mayer, Brown, Rowe & Maw, L.L.P., of Chicago, for appellee Ernst & Young, L.L.P.

JUSTICE KILBRIDE delivered the opinion of the court:

This case presents questions of whether plaintiffs have standing to assert a cause of action on behalf of Cook County under article XX of the Code of Civil Procedure (735 ILCS 5/20—101 *et seq.* (West 1998)), and whether plaintiffs have standing to assert common law claims on behalf of the County. The circuit court of Cook County dismissed the complaint, finding article XX unconstitutional to the extent it conferred authority on private citizens to file derivative claims on behalf of the County. We allowed plaintiffs' direct appeal pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)). We now affirm and hold: (1) the State's Attorney has the exclusive power to represent the County in litigation when the County is the real party in interest; (2) section 20—104(b) of article XX is unconstitutional to the extent it purports to confer standing on private citizens to sue when the County is the real party in interest; and (3) plaintiffs' common law claims do not lie when no claim is made that a public official is responsible for the alleged injury, and only the State's Attorney has the authority to assert those claims.

## I. BACKGROUND

In March 2001, plaintiffs, Robert F. Rifkin, Raymond G. Scachitti, and Patrick J. Houlihan, taxpayers and residents of Cook County, filed a putative class action seeking to recover, on behalf of the County, overcharges made by Bear Stearns & Company in connection with

advance refunding bond transactions in 1992. Bear Stearns was the lead underwriter for the County's issuance of bonds to refinance, at lower interest rates, certain municipal bonds previously issued by the County. The case was essentially a reassertion of pendent state claims dismissed in an earlier suit filed in the United States District Court for the Northern District of Illinois. That dismissal was affirmed on appeal. See *Rifkin v. Bear Stearns & Co.*, 248 F.3d 628 (7th Cir. 2001).

An advance refunding bond transaction is a financial investment vehicle allowing the sale of new bonds and the use of the proceeds to purchase securities. These securities are then held in a defeasance escrow to assure future payment of outstanding bonds that cannot presently be redeemed because the call provisions are for a future date. According to the complaint, federal law restricts the overall yield local governments can earn on securities placed in a defeasance escrow. By charging more than market value, Bear Stearns reduced, or "burned," the yield on the securities and kept the profit. The complaint alleges the "burn" violates IRS regulations requiring securities to be purchased at market value and any profit resulting from positive arbitrage be paid to the United States Treasury. If this is not done, the refunding bonds may lose tax-exempt status. The complaint claims that in the 1992 transaction, Bear Stearns overcharged the County by approximately $249,000.

The complaint sought relief against Bear Stearns under sections 20—102 and 20—103 of article XX (735 ILCS 5/20—102, 20—103 (West 1998)). Section 20—102 provides that any person who receives fraudulently obtained public funds, whether or not that person has committed the fraud, must refund the money. 735 ILCS 5/20—102 (West 1998). Section 20—103 provides that a person who receives compensation benefits or remunera-

tion "to which he is not entitled, or in a greater amount than that to which he is entitled" shall be liable to repay those amounts and, in addition, is liable for civil penalties, including treble damages. 735 ILCS 5/20—103 (West 1998). A common law claim was also asserted against Bear Stearns for fraudulently representing to the County that it was paying fair market value for the securities and that the escrow accounts would not produce positive arbitrage. The complaint also sought consequential damages against Bear Stearns for breach of its underwriting contract, or for rescission and restitution.

The complaint sought common law relief against the accounting firm Ernst & Young (Ernst), engaged to verify the accuracy of the escrow account for the County. Plaintiffs allege Ernst breached its contract by submitting a false or recklessly inaccurate verification and that it committed accountant malpractice by failing to exercise reasonable care or competence while completing its verification, resulting in a misstatement of the yield on the securities in the escrow fund.

Common law breach of contract claims were also asserted against Public Sector Group, Inc. (PSG), and Seaway National Bank of Chicago (Seaway). PSG and Seaway were engaged by the County to provide financial advisory services in connection with the refunding bonds. The complaint alleged they failed to monitor and verify the accuracy of the amounts charged to the County for services and securities, and failed to disclose to the County that it paid more than fair market value for securities purchased for the defeasance escrow.

The complaint also asserted a common law breach of fiduciary duty claim against all defendants, alleging that as investment advisors to the County, all defendants were, as a matter of law, fiduciaries to the County. Plaintiffs claim defendants violated their fiduciary duties by failing to monitor and inform the County of markups

on the securities issued in the advanced refunding transaction.

The complaint did not allege that the County or any County official was in any way complicit in the alleged misrepresentations or fraud. On the contrary, plaintiffs alleged that defendants' fraudulent concealment of the marked-up price of the securities "was intended to, and did in fact, prevent the County from knowing either that it had claims against the Defendants or the true facts underlying those claims."

In their prayer for relief, plaintiffs sought class certification, compensatory and treble damages, rescission of contracts and restitution, attorney fees and expenses, and equitable relief, including imposing a constructive trust on or otherwise restricting defendants' assets to ensure plaintiffs an effective remedy.

On March 23, 1999, prior to filing the original suit in federal court, plaintiffs' counsel sent by certified mail a letter to the Cook County State's Attorney, giving notice of his intent to file suit, as required by section 20—104(b) of article XX (735 ILCS 5/20—104(b) (West 1998)), for overcharges incurred by Cook County in connection with the 1992 bond issue, and demanding that the State's Attorney pursue any and all claims stemming from overcharges in the bond issue transactions. Section 20—104(b) provides:

"Notwithstanding any other provision in this Section, any private citizen residing within the boundaries of the governmental unit affected may bring an action to recover the damages authorized in this Article on behalf of such governmental unit if: (a) the citizen has sent a letter by certified mail, return receipt requested, to the appropriate government official stating his intention to file suit for recovery under this Article and (b) the appropriate government official has not, within 60 days of the date of delivery on the citizen's return receipt, either instituted an action for recovery or sent notice to the citizen by certified mail, return receipt requested, that the official has arranged for

a settlement with the party alleged to have illegally obtained the compensation or that the official intends to commence suit within 60 days of the date of the notice. A denial by the official of the liability of the party alleged liable by the citizen, failure to have actually arranged for a settlement as stated, or failure to commence a suit within the designated period after having stated the intention in the notice to do so shall also permit the citizen to commence the action.

For purposes of this subsection (b), 'appropriate government official' shall mean (1) the Attorney General, where the government unit alleged damaged is the State; (2) the corporation counsel where the government unit alleged damaged is a municipality with a population of over 500,000; and (3) the chief executive officer of any other local government unit where that unit is alleged damaged.

Any private citizen commencing an action in compliance with this subsection which is reasonable and commenced in good faith shall be entitled to recover court costs and litigation expenses, including reasonable attorney's fees, from any defendant found liable under this Article." 735 ILCS 5/20—104(b) (West 1998).

Article VII, section 4(b), of the Illinois Constitution of 1970 designates the president of the Cook County board as the chief executive officer of the County. The notice was not sent, in the manner required by the statute, to John H. Stroger, Jr., who was then the president of the Board of Commissioners of Cook County.

The State's Attorney did not respond to the notice, and plaintiffs filed suit in federal court, asserting a federal claim as well as all the state claims later presented in the circuit court of Cook County. The County appeared in the lawsuit, but did not originally file any pleading attacking the complaint. The defendants filed motions to dismiss, asserting, *inter alia*, the notice was defective because it was not addressed to the chief executive officer of Cook County as required by the statute. When the motion was called for hearing, the State's Attorney appeared on behalf of the County and sought leave to

join in the request for dismissal. The district court denied the defendants' motion, but did not rule on the County's request. Ultimately, the federal claims and the pendent state claims were dismissed for failure to allege an injury sufficient to establish standing under article III, section 2, of the United States Constitution. After the dismissal was affirmed on appeal (*Rifkin*, 248 F.3d 628), plaintiffs filed the state court lawsuit, but did not give any further notice to the chief executive officer of the County.

All defendants and the County, in its capacity as a nominal plaintiff, filed motions to dismiss, raising both the issue of the sufficiency of the presuit notice and the issue of plaintiffs' lack of standing. The trial court dismissed the common law claims on June 19, 2003, finding that plaintiffs lacked standing to assert common law causes of action on behalf of the County. The court also denied plaintiffs' motion to amend the complaint to assert article XX claims against Ernst, PSG and Seaway, finding those defendants would be prejudiced by the amendment and that no sufficient excuse was offered to explain the failure to include article XX claims against those defendants in the original complaint. On August 20, 2003, the court dismissed all remaining counts of the complaint with prejudice, finding section 20—104(b) of article XX unconstitutional to the extent it authorized persons other than the State's Attorney to file actions on behalf of the County in cases when the County is the real party in interest. The court did not rule directly on the issue of plaintiffs' noncompliance with the statutory presuit-notice requirement. This appeal followed.

## II. ANALYSIS

Plaintiffs contend the trial court erred in finding section 20—104(b) of article XX unconstitutional because article XX allows citizens to sue on behalf of the County when the County is the real party in interest. Plaintiffs also assign as error the dismissal of their common law

claims and the trial court's refusal to allow them to file an amended complaint.

Whether a statute is unconstitutional is a question of law reviewed *de novo*. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003). An order dismissing a complaint for lack of standing also presents a question of law reviewed *de novo*. *Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002). A trial court's denial of a motion for leave to amend a pleading is reviewed under an abuse of discretion standard. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992).

## A. Article XX Claims

In *Fuchs v. Bidwill*, 65 Ill. 2d 503, 510 (1976), we determined that the Attorney General, as the constitutionally designated legal officer of the state, is the only person authorized to represent the state in matters when the state is the real party in interest. In *Lyons*, we reaffirmed this holding and held that section 20—104(b) of article XX is unconstitutional to the extent it confers on private citizens standing to commence and prosecute actions on behalf of the state when the state is the real party in interest, thus improperly usurping the constitutional powers of the Attorney General. *Lyons*, 201 Ill. 2d at 541. As we said in *Lyons*, "the 'real party in interest' has an actual and substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the case." *Lyons*, 201 Ill. 2d at 534. The plaintiffs in *Lyons* brought their case as a taxpayer derivative action. We held that because only the state would be entitled to the benefits of a successful action, the state was the real party in interest. *Lyons*, 201 Ill. 2d at 535. Here, only the County would benefit from a successful prosecution of the common law and article XX claims. Therefore, the County is the only real party in interest.

Like the Attorney General, a State's Attorney is a

constitutional officer. The 1870 Illinois Constitution provided that there "be elected a state's attorney in and for each county in lieu of the state's attorneys now provided by law." Ill. Const. 1870, art. VI, § 22. This court has held that the State's Attorney is a State officer under the 1870 Constitution. *Hoyne v. Danisch*, 264 Ill. 467, 470-73 (1914). The 1970 Illinois Constitution contains a similar provision: "A State's Attorney shall be elected in each county in 1972 and every fourth year thereafter for a four year term." Ill. Const. 1970, art. VI, § 19. In *Ingemunson v. Hedges*, 133 Ill. 2d 364, 369-70 (1990), we reaffirmed the holding in *Hoyne*, noting that the debates of the Sixth Illinois Constitutional Convention of 1970 indicate the drafters of the 1970 Constitution agreed that State's Attorneys should be classified as state, rather than county, officers.

This court has consistently held that the powers of the State's Attorney are derived from the constitution. In *People ex rel. Courtney v. Ashton*, 358 Ill. 146, 150-51 (1934), we observed that the State's Attorney is a constitutional officer whose powers may not be stripped or transferred to others by a legislative body. See also *Ashton v. County of Cook*, 384 Ill. 287, 296-97 (1943).

In *People ex rel. Kunstman v. Nagano*, 389 Ill. 231 (1945), we considered the question of whether the legislature could constitutionally empower a private citizen to bring an action for forfeiture of an alien's real estate. In that case, a private citizen sought to enforce a provision of the Aliens Act (Ill. Rev. Stat. 1943, ch. 6, par. 1 *et seq.*) requiring forfeiture of title to lands in this state held for more than six years by an alien over the age of 21 years. The State's Attorney was empowered to enforce the Act to compel a sale of the property by a court-appointed officer and required payment of the proceeds of the sale to the county treasurer. As required by the Aliens Act, the plaintiff, a private citizen, first gave notice

to the State's Attorney that an alien was holding title to the land in question. The State's Attorney took no action, and the plaintiff, as permitted by the Act, then filed suit. The alien moved to dismiss, claiming the Cook County State's Attorney and the Illinois Attorney General are the sole representatives of the state in proceedings by the state affecting a public interest, and that the provision in the Aliens Act allowing a private citizen to bring the suit was unconstitutional. The trial court dismissed the suit, and a direct appeal was taken to this court. We affirmed, determining that the forfeiture proceeding was a matter affecting a public interest. *Nagano*, 389 Ill. at 250. We held the State's Attorney is a constitutional officer with rights and duties "analogous to or largely coincident with the Attorney General, though not identical, and the one to represent the county or People in matters affected with a public interest." *Nagano*, 389 Ill. at 249. Accordingly, we held section 2 of the Aliens Act, providing the right of a private citizen to sue if the State's Attorney neglected or refused to proceed, was unconstitutional. *Nagano*, 389 Ill. at 252. We rejected the plaintiff's argument that the statute does not entirely strip the State's Attorney of the privilege to conduct the proceedings, as a citizen could only sue if the State's Attorney failed to act within 30 days. We reasoned that the State's Attorney and the Attorney General are the only officers who could constitutionally prosecute such a suit at any time and that the State's Attorney's constitutional powers "cannot be placed" with persons not having the responsibility of the office. *Nagano*, 389 Ill. at 252. We observed:

"It is presumed that [the State's Attorney] will act under such a heavy sense of public duty and obligation for enforcement of all our laws that he will commit no wrongful act. If he does, the remedy must be by other well known means." *Nagano*, 389 Ill. at 252.

The holding in *Lyons* reaffirming the exclusive right

of the Attorney General to represent the state in all matters when the state is the real party in interest echoes the reasoning and the holding in *Nagano*. Plaintiffs argue that *Nagano* is no longer viable because a provision in the 1870 Constitution describing performance of duties by the State's Attorney in language similar to the provision creating the office of Attorney General no longer exists. Under the present constitution, the Attorney General "shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. 1970, art. V, § 15. By contrast, the provision creating the office of State's Attorney only sets out the manner of election and the qualifications for the office. Ill. Const. 1970, art. VI, § 19. It contains no reference to the powers and duties of the office. Under the 1870 Constitution, prior to the 1964 amendment to the judicial article, section 32 of the judicial article provided that "[a]ll officers *** shall perform such duties and receive such compensation as is or may be provided by law." Ill. Const. 1870, art. VI, § 32. This section was removed when the amendment to article VI was adopted in 1964. It does not appear in the 1970 Constitution.

This court in both *Courtney* and *Nagano* referred to the quoted language in section 32 of the 1870 Constitution in analyzing the derivation of the State's Attorney's powers. See *Courtney*, 358 Ill. at 150-51; *Nagano*, 389 Ill. at 248-49.

In *Courtney*, this court said the State's Attorney was a constitutional officer who may not be stripped of any powers by a legislative body. *Courtney*, 358 Ill. at 151. In *Nagano*, this court observed that "we have always viewed a State's Attorney as a constitutional officer with rights and duties analogous to or largely coincident with the Attorney General." *Nagano*, 389 Ill. at 249. Citing *Nagano*, we said in *In re C.J.*, 166 Ill. 2d 264, 269 (1995), that "[t]he State's Attorney is a constitutional officer

who represents the people in matters affected with a public interest." It is because the office of State's Attorney was created by the constitution and functions like the Attorney General in his or her own county that the State's Attorney is deemed to have constitutional powers similar to those of the Attorney General.

Furthermore, certain powers and duties of the State's Attorney are defined by section 3—9005 of the Counties Code (55 ILCS 5/3—9005 (West 2002)). We have stated that these powers and duties may be revised by statute. *People v. Izzo*, 195 Ill. 2d 109, 117 (2001). It does not follow, however, that the legislature can reduce a State's Attorney's constitutionally derived power to direct the legal affairs of the county. In the case of the Attorney General, we have held that the duties of that office are prescribed by law and include those powers traditionally held at common law. *Lyons*, 201 Ill. 2d at 541. The legislature may add to those powers, but it cannot reduce the Attorney General's common law authority in directing the legal affairs of the state. *Lyons*, 201 Ill. 2d at 541. The State's Attorney's powers are analogous to and largely coincident with those of the Attorney General and it follows, therefore, that the legislature may not usurp those constitutionally derived powers. Accordingly, as section 20—104(b) of article XX purports to give private citizens the right to exercise a power lodged exclusively in the State's Attorney, it is unconstitutional as applied in this case.

As plaintiffs cannot assert article XX claims on behalf of the County, we need not consider the sufficiency of the presuit notice. Nor need we review the order denying leave to amend the complaint to assert article XX claims against PSG, Ernst and Seaway, as plaintiffs have no standing to assert those claims on behalf of the County.

### B. Common Law Claims

The trial court dismissed the plaintiffs' common law

claims against PSG, Ernst, and Seaway, finding that resolution of the question of plaintiffs' standing to assert those claims was controlled by the decision of the appellate court in *City of Chicago ex rel. Scachitti v. Prudential Securities, Inc.*, 332 Ill. App. 3d 353 (2002). In that case, the same plaintiffs who brought the present action asserted, on behalf of the City of Chicago, derivative common law claims nearly identical to those in the case before us. The case was consolidated with another similar suit brought on behalf of the County of Du Page. Those claims also arose out of advance refunding bond transactions resulting in yield burning. As in the present case, the plaintiffs asserted standing as taxpayers affected by the City's and the County's alleged losses. The appellate court affirmed the dismissal of the common law claims, holding the allegations in the complaint did not support common law taxpayer standing because there was no claim of a breach of duty by a public officer. Like the case before us, the *Scachitti* complaints "cast the City and the County as the unknowing victims of private third parties" with no claim that the third parties benefitted from any breach of duty by a public officer. *Scachitti*, 332 Ill. App. 3d at 370. The court reasoned that this court has only authorized suits in equity by taxpayers to enjoin the misappropriation or waste of public funds by public officials (*Reid v. Smith*, 375 Ill. 147 (1940)) and suits to impose a public trust against third parties that benefit from a public officer's breach of fiduciary duty (*People ex rel. Daley v. Warren Motors, Inc.*, 114 Ill. 2d 305 (1986)). *Scachitti*, 332 Ill. App. 3d at 369.

Plaintiffs argue *Scachitti* was wrongly decided. They argue that taxpayer standing is based on their increased burden of taxation resulting from the misapplication of public funds, citing *Fergus v. Russel*, 270 Ill. 304 (1915). We said in that case:

"We have repeatedly held that tax-payers may resort to a court of equity to prevent the misapplication of public

funds, and that this right is based upon the tax-payers' equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation. [Citations.]" *Fergus*, 270 Ill. at 314.

The action in *Fergus* was, however, a proceeding against the state Treasurer and the Auditor of Public Accounts to enjoin the alleged misappropriation of public funds from the state treasury. The taxpayer plaintiffs claimed the legislation appropriating funds for salaries of state officers was unconstitutional because the provision appeared in an omnibus bill referencing more than a single subject, contrary to article IV, section 16, of the 1870 Constitution. The suit sought relief against the state Treasurer and the Auditor of Public Accounts. No claims were asserted against private, third-party wrongdoers. Thus, *Fergus* is inapplicable here.

Plaintiffs also note that we allowed a taxpayer derivative action against a parking meter company for charging for the service of parking meters actually buried in the snow. *City of Chicago ex rel. Konstantelos v. Duncan Traffic Equipment Co.*, 95 Ill. 2d 344 (1983). In that case, the plaintiffs sued pursuant to the authority of section 1—5—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—5—1) and sought relief against the Chicago deputy commissioner of streets and sanitation in his official capacity, alleging he illegally approved false invoices for meter inspections submitted by the parking meter company vice president, who had contributed to the commissioner's political organization. Thus, the basis for the action was clearly the misconduct of a public official. No official misconduct is claimed in the case before us, and *Konstantelos* is thus inapplicable here.

We note plaintiffs have cited no case where this court permitted a common law taxpayer suit to proceed absent some breach of duty by a public official. Defendants contend that this is a recognition of the likelihood that a

public officer who has committed a breach of duty may be unable or unwilling to make an objective, dispassionate decision about bringing suit and, in fact, may be able to prevent the public body involved from filing an appropriate action. In those circumstances, a taxpayer suit may provide the only means of remedying official misconduct. On the other hand, when there has been no breach of duty by a public officer, the appropriate public officials will be reasonably certain to pursue claims for injuries to the public treasury, thus rendering a taxpayer suit unnecessary.

We agree with defendants' reasoning. As we said in *Lyons*, " '[i]t is presumed that a public official "performs the functions of his office according to law and that he does his duty." ' " *Lyons*, 201 Ill. 2d at 539, quoting *Fuchs v. Bidwill*, 65 Ill. 2d 503, 510 (1976), quoting *People ex rel. Hoyne v. Newcomer*, 284 Ill. 315, 324 (1918). There is no reason to assume that the State's Attorney's decision to oppose plaintiffs' right to maintain their action in this case is ill-considered, unfounded, or improperly motivated. If the voters are unsatisfied with the State's Attorney's manner of discharging his duties, they have a remedy every four years in the election booth.

Further support for our holding may be found in the Counties Code, where it is provided:

> "It shall be the duty of the county boards of each of the counties of this State to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties ***." 55 ILCS 5/1—6003 (West 1998).

The Counties Code further provides that the State's Attorney shall "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." 55 ILCS 5/3—9005(a)(1) (West 1998).

In *Ashton*, 384 Ill. 287, this court applied earlier,

substantively identical versions of these two statutes in determining that the county board lacked authority to employ private counsel to perform legal services for the County. This court held that by law the State's Attorney is "the attorney and legal adviser of the county officials in all matters pertaining to the official business of the county." *Ashton*, 384 Ill. at 297. The Counties Code neither expressly nor implicitly authorized the county board to employ private attorneys. *Ashton*, 384 Ill. at 299. Therefore, the court held that private counsel could not enforce his contingent fee contract to perform legal services for the County, as the contract was wholly void. *Ashton*, 384 Ill. at 301.

Applying the holding in *Ashton*, the appellate court held in *McKay v. Kusper*, 252 Ill. App. 3d 450 (1993), that taxpayers lacked standing to sue on behalf of Cook County. In that case, following the State's Attorney's refusal to proceed, the taxpayers asserted a derivative action on behalf of the County against the former and present county clerks and a bank for violations of public funds investment statutes. The trial court dismissed the suit for lack of standing, and plaintiffs appealed. The appellate court rejected the taxpayers' argument that they had an equitable right to bring suit to protect their interest in public funds, noting that unlike the Illinois Municipal Code, the Counties Code contains no authority for filing private taxpayer actions. *McKay*, 252 Ill. App. 3d at 457. The court, relying on *Ashton*, held that derivative taxpayer actions on behalf of the County are prohibited. *McKay*, 252 Ill. App. 3d at 457-58.

We agree that the *McKay* court correctly applied *Ashton* to defeat the taxpayer's standing argument. Unlike the Municipal Code, the Counties Code does not authorize taxpayer derivative actions. Under the Counties Code, the State's Attorney has exclusive authority to prosecute all actions on behalf of the County. In the case before us,

as in *McKay*, the State's Attorney has elected not to proceed. There is no statutory authority for the taxpayer to proceed, and no authority arises by implication.

Plaintiffs argue that this construction of the Counties Code denies taxpayers due process because it might impinge their fundamental right to protect a property interest. No authority is cited for this argument as required by Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)). Moreover, that assertion is illogical when a successful prosecution of the common law claims would confer no direct benefit at all on the plaintiffs, who have asserted "only a generalized injury shared by all taxpayers of Cook County" that is legally insufficient to establish standing. *Rifkin*, 248 F.3d at 632. Only the County would benefit from any recovery, and only the State's Attorney may assert those claims on behalf of the County. Therefore, the common law counts against all defendants were properly dismissed.

## III. CONCLUSION

The article XX claims were properly dismissed because the purported grant of authority to private citizens to prosecute suits on behalf of the County is unconstitutional as applied in this case. The State's Attorney, as a constitutional officer whose duties are analogous to and coincident with those of the Attorney General, is the only person empowered to represent the County in matters when, as here, the County is the real party in interest. Therefore, plaintiffs lack standing to assert article XX claims.

Plaintiffs also lack standing to assert common law taxpayer claims when no claim is made that the alleged injury resulted from the act of any public official. Further, taxpayer derivative claims asserted on behalf of the County are foreclosed because there is no authority in the Counties Code for bringing such actions by any person other than the State's Attorney.

For the foregoing reasons, the orders of the circuit court dismissing all claims with prejudice are affirmed.

*Circuit court judgment affirmed.*