# Illinois Official Reports

## Appellate Court

***Schacht v. Brown*, 2015 IL App (1st) 133035**

| | |
|---|---|
| Appellate Court Caption | MARK J. SCHACHT, M.D., Individually and as a Taxpayer and/or on Behalf of Recipients of Fees to be Used to Finance Various Court Programs Within the Circuit Court of Cook County; JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and JOHN DOE 4, Individuals Who Were Formerly Subject to the Juvenile Justice System in Cook County and Who Were Denied the Benefit of Various Programs Intended to Provide Them With Relief, and on Behalf of all Cook County Taxpayers, Plaintiffs-Appellants, v. DOROTHY BROWN, Not Individually But as Clerk of the Circuit Court of Cook County, TIMOTHY C. EVANS, Not Individually But as a Judge of the Circuit Court of Cook County, and the COUNTY OF COOK, a Body Politic, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-13-3035 |
| Filed<br>Rehearing denied | June 16, 2015<br>July 31, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-50579; the Hon. Thomas Allen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Office of Alan J. Mandel, Ltd., of Skokie (Joseph E. Tighe, of counsel), Stuttley Group, LLC, of Harvey (Michael E. Stuttley, of counsel), and Novoselsky Law Offices, P.C., of Chicago (David A. Novoselsky, of counsel), for appellants.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Daniel Gallagher, Jeffrey McCutchan, and Sisavanh Baker, Assistant State's Attorneys, of counsel), for appellees. |

JUSTICE LIU delivered the judgment of the court, with opinion. Presiding Justice Simon and Justice Neville concurred in the judgment and opinion.


## OPINION

¶ 1        Plaintiffs, Mark J. Schacht and several John Does, appeal an order of the circuit court dismissing their third amended complaint with prejudice pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)). On appeal, plaintiffs contend that the court erred in determining that they did not have standing to challenge the method in which the clerk of the circuit court of Cook County holds and remits certain court fees. For the following reasons, we affirm.

¶ 2                                BACKGROUND

¶ 3        The instant case was commenced by the Reverend Jesse Jackson, Sr. (Reverend Jackson), Rainbow Push Coalition, Inc. (Rainbow Push), and John Does one through four (collectively, John Does), against Dorothy Brown (Clerk) and the County of Cook (Cook County) (collectively, defendants). Schacht later substituted for Reverend Jackson and Rainbow Push as the plaintiff, and added Chief Judge Timothy C. Evans as a defendant. Chief Judge Evans was eventually dismissed with prejudice from the suit.[1] Plaintiffs then filed the third amended complaint, alleging, *inter alia*, that Dorothy Brown, as the clerk of the circuit court of Cook County, is engaged in a practice of holding and remitting certain court fees in a manner not authorized by law. Below, we recite those allegations that are pertinent to our disposition.

¶ 4        The Illinois General Assembly has passed legislation that authorizes counties in the State of Illinois to impose certain charges that the clerk of the circuit court is tasked with collecting. Some of these charges are to be imposed at the time an initial pleading or appearance is filed in a civil case; others are imposed for violations of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2012)) or take the form of "fees to be paid on judgments of guilty or grants of supervision for a range of offenses from business offenses and petty offenses to felonies." The clerk of the circuit court, in some cases, is tasked with remitting the proceeds of such fees to the county treasurer; in other cases, the clerk is tasked with depositing the proceeds into accounts for the operation of certain programs specified by the enabling legislation.

¶ 5        Plaintiffs are taxpayers of Cook County, Illinois, and represent individuals who have paid certain of these fees or whom the legislature intended to benefit from the collection of such fees. Schacht is a Cook County resident who has paid "initial filing fees" in connection with litigation in the circuit court of Cook County, and "Mandatory Fees and Costs" in connection with minor traffic offenses. John Does are individuals who were formerly subject to the juvenile justice system in Illinois and who have paid "fines" identified in the complaint. In addition, John Does were allegedly eligible, at one time, to participate in a juvenile intervention program that should have received, as funding, a portion of mandatory fees and

_____

[1]Chief Judge Evans continued to be named as a defendant in the caption only for the purpose of preserving plaintiffs' appellate rights.

costs and "fines imposed on judgments of guilty and supervision in felony, misdemeanor, business and petty offenses."

¶ 6      Plaintiffs allege that funds collected by the Clerk as mandatory fees and costs were never remitted as required by their enabling legislation. Specifically, they claim that the following fees were not remitted as required by law: the court automation fee (705 ILCS 105/27.3a (West 2012)); document storage fee (705 ILCS 105/27.3c (West 2012)); court system fee (55 ILCS 5/5-1101(a), (c) (West 2012)); mental health court fee (55 ILCS 5/5-1101(d-5) (West 2012)); youth diversion program fee (55 ILCS 5/5-1101(e) (West 2012)); drug court fee (55 ILCS 5/5-1101(f) (West 2012)); operation and administrative fund fee (55 ILCS 5/5-1101(f) (West 2012)); peer court fee (55 ILCS 5/5-1101(e) (West 2012)); children's advocacy center fee (55 ILCS 5/5-1101(f-5) (West 2012)); and children's waiting room fee (705 ILCS 105/27.7 (West 2012)).

¶ 7      In count I, plaintiffs request a return of the court automation, document storage, and children's waiting room charges, which, they allege, amount to "court taxes" in violation of the Illinois Constitution. In count II, plaintiffs seek a mandatory injunction that would require the Clerk to collect the alleged "court taxes" and remit them to the Cook County treasurer, and that would require the treasurer to disburse those funds in accordance with the enabling legislation. In count III, plaintiffs request a return of all fines that were improperly collected. In count IV, they request a mandatory injunction that would require the Clerk to collect the subject fines and remit them to the Cook County treasurer, and that would require the treasurer to disburse those funds in accordance with the enabling legislation. In count V, plaintiffs request an injunction "to compel defendants to comply with the requirements of law in the performance of the duties that they were elected to uphold and fulfill." Finally, in count VI, plaintiffs seek to permanently enjoin Cook County from diverting money to the operation and administrative fund and "Fund 883."

¶ 8      On May 13, 2013, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)), asserting, *inter alia*, that plaintiffs lacked standing to challenge the fees identified in the complaint. First, defendants argued that the fees under section 5-1101 of the Counties Code (55 ILCS 5/5-1101 (West 2012)) were, in fact, "fines" that could not be challenged by plaintiffs under *People v. Graves*, 235 Ill. 2d 244 (2009). Second, they argued that none of the fee statutes provided plaintiffs with a private right of action to enforce the proper collection and remittance of the underlying fees.

¶ 9      On August 20, 2013, the circuit court entered a written order dismissing the third amended complaint with prejudice on the grounds that plaintiffs lacked standing to bring their claims. The court concluded that none of the fee statutes implied a private right of action; that plaintiffs could not challenge criminal "fines" that were imposed against them; and that plaintiffs' claim for an injunction was moot because they had "no protectable interest against the Clerk and the County."

¶ 10      We granted plaintiffs leave to file a late notice of appeal. We thus have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. May 30, 2008).

¶ 11                                    ANALYSIS

¶ 12      "A complaint may be involuntarily dismissed for lack of standing pursuant to section 2-619(a)(9) of the Code." *Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002). We review an order dismissing a complaint for lack of standing *de novo* (*id.*), and may affirm on any basis present

in the record (*Malinksi v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 6).

¶ 13    Plaintiffs contend that the circuit court erred when it concluded that they lacked standing to challenge the manner in which the Clerk holds and remits certain court fees. According to plaintiffs, the court misconstrued the nature of this lawsuit by determining that plaintiffs sought to enforce a private right of action under the fee statutes when, in fact, they sought relief "as taxpayers, as well as individuals directly impacted by the failure of Defendants to utilize [court] funds as required by law." Plaintiffs maintain that, as taxpayers and individuals affected directly by defendants' actions, they have standing to pursue their claims.

¶ 14    The doctrine of standing ensures that issues are raised only by those parties with a real interest in the outcome of the controversy. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). To have the requisite standing to maintain an action, a plaintiff must complain of some injury in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The alleged injury must be: (1) distinct and palpable, (2) fairly traceable to the defendants' actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Id.* at 492-93. Furthermore, the plaintiff is not required to "allege facts establishing that he has standing to proceed"; "[r]ather, it is the defendant's burden to plead and prove lack of standing." *Wexler*, 211 Ill. 2d at 22. Dismissal is mandated where a plaintiff lacks standing, because such a deficiency negates the very cause of action. *Id.*

¶ 15    Plaintiffs claim that they have standing, as taxpayers, to challenge the manner in which the Clerk holds and remits the court fees in question, citing *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466 (2005). In *Bear Stearns*, the plaintiffs, taxpayers of Cook County, filed a derivative action on behalf of the county to recover overcharges made by the defendant in connection with certain advance refunding bond transactions. *Bear Stearns*, 215 Ill. 2d at 468-69. Section 20-104(b) of the Code allowed residents within a governmental unit to bring an action for damages authorized under article XX on behalf of the governmental unit provided that certain requirements were met. *Id.* at 471-72. The circuit court found article XX unconstitutional and dismissed the plaintiffs' complaint. *Id.* at 468. In affirming the circuit court's ruling, the supreme court held that "the State's Attorney has the exclusive power to represent the County in litigation when the County is the real party in interest" and that "section 20-104(b) *** [was] unconstitutional to the extent it purport[ed] to confer standing on private citizens to sue when the County is the real party in interest." *Id.* The supreme court further held that plaintiffs "lack[ed] standing to assert common law taxpayer claims when no claim is made that the alleged injury resulted from the act of any public official." *Id.* at 483.

¶ 16    Plaintiffs do not rely on the holdings reached in the *Bear Stearns* decision as support for their standing argument. Rather, they cite to parts in the supreme court's analysis where the court distinguished *Bear Stearns* from two prior cases, *Fergus v. Russel*, 270 Ill. 304 (1915), and *City of Chicago ex rel. Konstantelos v. Duncan Traffic Equipment Co.*, 95 Ill. 2d 344 (1983), where the court permitted taxpayer suits. In distinguishing *Bear Stearns* from *Fergus* and *Duncan Traffic Equipment Co.*, the supreme court observed that the plaintiffs had "cited no case where this court permitted a common law taxpayer suit to proceed absent some breach of duty by a public official." *Bear Stearns*, 215 Ill. 2d at 480.

¶ 17    In addition, the court observed the following about its ruling in *Bear Stearns*:

"[T]his is a recognition of the likelihood that a public officer who has committed a breach of duty may be unable or unwilling to make an objective, dispassionate decision

about bringing suit and, in fact, may be able to prevent the public body involved from filing an appropriate action. In those circumstances, a taxpayer suit may provide the only means of remedying official misconduct. On the other hand, when there has been no breach of duty by a public officer, the appropriate public officials will be reasonably certain to pursue claims for injuries to the public treasury, thus rendering a taxpayer suit unnecessary." *Id.* at 480-81.

¶ 18    We have reviewed *Bear Stearns* and the cases cited therein, and do not believe that they support plaintiffs' assertions regarding their standing in this case. *Bear Stearns* involved a situation which is not at issue here, *i.e.*, whether taxpayers may bring derivative actions on behalf of the county against third-party defendants. *Fergus* and *Konstantelos* are also distinguishable in that neither involved a common law taxpayer action to challenge the appropriation of court fees.

¶ 19    "Taxpayer standing is a narrow doctrine permitting a taxpayer the ability to challenge the misappropriation of public funds." *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 29. The long-standing rule in Illinois is "that citizens and taxpayers have a right to enjoin the misuse of public funds, and that this right is based upon the taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by such misappropriation." *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160 (1956). "The key to taxpayer standing is the plaintiff's liability to replenish public revenues depleted by an allegedly unlawful government action." *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1102 (2011). "Such taxpayers have a legally cognizable interest in their tax liability, their increased tax liability is a specific injury, and their injury is redressable by an injunction against the challenged governmental expenditure of tax funds." *Barber*, 406 Ill. App. 3d at 1102.

¶ 20    Here, plaintiffs have not directed us to any evidence showing that they, as taxpayers, have been or will be liable for increased taxes as a result of the Clerk's collection and alleged misappropriation of any fees that were allocated or intended for specific juvenile intervention programs. Plaintiffs argue that taxpayers have an "inherent right to complain of a misapplication of public funds"; however, as noted above, our case law on taxpayer standing requires a specific showing that the plaintiffs will be liable to replenish public revenues depleted by the Clerk's alleged retention or misuse of said funds. In the absence of any allegation that such liability would result or that any resulting pecuniary loss would adversely impact all taxpayers, we can only conclude, under the circumstances, that plaintiffs have no legally cognizable interest as taxpayers in the outcome of this lawsuit. *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 30 (finding that plaintiffs failed to establish standing where they did not demonstrate that they were responsible for replenishing public revenues).

¶ 21    Plaintiffs argue that they also have standing to bring their claims because they were directly impacted by the failure of defendants to utilize court funds as required by law. In their third amended complaint, plaintiffs allege that John Does were formerly subject to the juvenile justice system and eligible to participate in a juvenile intervention program that was to be funded by a portion of mandatory fees and costs and "fines imposed on judgments of guilty and supervision in felony, misdemeanor, business and petty offenses." Plaintiffs allege that because the funds collected as mandatory fees and costs were not remitted as required by statute, John Does were deprived of the opportunity to participate in such juvenile intervention

program. As discussed below, we do not believe that these allegations establish that plaintiffs have standing to bring their claims.

¶ 22    Assuming, *arguendo*, that John Does have suffered an injury to a legally cognizable interest by being deprived of participation in the juvenile intervention program, we do not see how such injury could be prevented or redressed by the grant of the requested relief. Plaintiffs seek the return of "fines" paid by John Does and injunctions that would require the Clerk and County to comply with the statutes authorizing those fines. There is no allegation, however, that by paying the "fines" in question, John Does were entitled to participate in the juvenile intervention program. That is, return of any fines paid by John Does would not serve to remunerate them for their lost opportunity to participate in the juvenile intervention program(s) because such fines were not paid for the purpose of securing eligibility for the program(s). Rather, as plaintiffs acknowledge, the purpose of the fines is and has always been to provide the *county* with a means of funding various court programs.

¶ 23    Similarly, we find that an injunction against the Clerk and Cook County would not redress or prevent any injury allegedly suffered by John Does. John Does are no longer subject to the juvenile justice system. Therefore, any benefit from an injunction issued in this case would have only prospective application, and would not redress their specific injuries from the alleged withholding or other related misconduct.

¶ 24    Plaintiffs ask us to consider the dissenting opinions in two supreme court decisions where they were denied leave to file petitions for an original writ of *mandamus*. The first dissent was issued in a case filed by plaintiffs against the same defendants named in the instant case. Schacht v. Brown, No. 114850 (Ill. Dec. 28, 2012) (Freeman, J., dissenting, joined by Burke, J.) (*Schacht Mandamus I*). The second dissent was issued in a case filed by Schacht against the Clerk and other Cook County officials. Schacht v. Preckwinkle, No. 117158 (Ill. Feb. 18, 2014) (Freeman, J., dissenting, joined by Burke, J.) (*Schacht Mandamus II*). Justice Freeman, joined by Justice Burke, disagreed in both cases with the majority's decision to deny plaintiffs leave to file a petition for writ of *mandamus*.

¶ 25    In both of these cases, the supreme court denied the petition for leave to file a complaint for writ of *mandamus* without comment, leaving the dissent to discern two reasons for the majority's decisions, one of which was standing. In *Schacht Mandamus I*, the dissent found that the plaintiffs "were not obligated to raise" the grounds for their standing in the case in their motion, and that the denial of leave to file a complaint, in that case, was improper given the lack of "adequate briefing and argument." *Schacht Mandamus I*, order at 3. The dissent observed that "Illinois law recognizes that taxpayers such as [plaintiff/plaintiffs] here can bring suit to challenge a public official's withholding of funds appropriated to remedy matters deemed important by the legislature" and that "the Clerk's alleged misappropriation of public finds constitutes an actual or threatened injury to a legally cognizable interest," based on this prior precedent. *Id.* Noting that "[t]he Cook County State's Attorney represents the Clerk and, accordingly, cannot pursue this claim," the dissent explained that a taxpayer derivative action was the "only means of remedying the misconduct" in that case. *Id.*

¶ 26    The dissent in *Schacht Mandamus I* also applied the criteria for standing to the facts presented in that case and found:

> "[T]he claimed injury is, first, distinct and palpable. Plaintiffs include John Does 1 through 4. They contend that they are persons who, as litigants in the circuit court of Cook County, were denied the benefit of the programs that should have been funded

- 6 -

pursuant to the appropriated funds giving rise to this motion. Second, plaintiffs' claimed injury is fairly traceable to the actions of the Clerk, who has withheld the funds necessary to finance, operate, and administer the programs from which plaintiffs would benefit. Third, plaintiffs' claimed injury is likely to be prevented and redressed by the grant of the writ of *mandamus*, which would simply order the clerk to perform her nondiscretionary duty to turn over the appropriated funds to the Cook County Treasurer for their designated purposes." *Id.* at 3-4.

¶ 27    In *Schacht Mandamus II*, the dissent expressed concern that "the intervening year ha[d] demonstrated the continued failure of the County and the Clerk to obey statutory funding requirements." *Schacht Mandamus II*, order at 3. Justice Freeman noted, "If these worthy programs and similar efforts, such as bail reform, are to result in lasting solutions, the County and the Clerk should simply obey the law and fund these programs, rather than expend resources to defend themselves in court." *Id.* at 3-4.

¶ 28    We acknowledge the valid public concern expressed by the dissent in both *Schacht mandamus* cases; however, we cannot apply the dissent's rationale to this case in the absence of a certainty that the supreme court's denials of leave to file petitions for *mandamus* relief in those cases were based on grounds exclusive of a lack of standing. Moreover, we do not believe that the plaintiffs in *this* case, who claim they are asserting the matter as individual taxpayers and not as a derivative action, have alleged grounds to establish either (i) a direct injury that may be remedied or (ii) individual liability for the alleged depletion of funds intended for the juvenile intervention programs. Accordingly, we cannot find error in the circuit court's decision to dismiss plaintiffs' third amended complaint based upon a lack of standing.

¶ 29    For the reasons stated, we affirm the order of the circuit court of Cook County dismissing plaintiffs' third amended complaint with prejudice.

¶ 30    Affirmed.