2021 IL App (1st) 200332-U

THIRD DIVISION
March 10, 2021

1-20-0332

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KATHLEEN HARPER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 8471 |
| | ) | |
| COOK COUNTY and HEALTH CARE SERVICE CORPORATION, | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held:* We affirm the judgment of the trial court dismissing the plaintiff's complaint with prejudice; plaintiff lacked standing to pursue a taxpayer action under the circumstances presented.

¶ 2    Kathleen Harper sued Cook County and Health Care Service Corporation alleging their misuse of public money in the administration of the county's employee healthcare program. Harper claimed her right to bring a taxpayer action to void the unauthorized service agreements between the county and HCSC.

¶ 3    The trial court dismissed Harper's complaint with prejudice on the grounds she lacked standing to pursue a taxpayer action and did not allege sufficient facts to support the assertion that the service agreements are unauthorized and therefore void *ab initio*. Harper contends the trial court erred in dismissing her complaint with prejudice because: (a) she has standing to sue in her capacity as a taxpayer; (b) the county entered a contract that does not comply with state law; and (c) she and her fellow taxpayers are liable to replenish the county's coffers. For the following reasons, we affirm the judgment of the trial court.

¶ 4                                    Background

¶ 5    In 2019, Harper filed a complaint against Cook County and HCSC to void their alleged unauthorized service agreements and for restitution. HCSC, a mutual reserve company doing business as Blue Cross Blue Shield of Illinois, is the third-party administrator of the county's self-funded employee healthcare plans. The service agreement between HCSC and the county was approved by the Board of Cook County Commissioners and the term of the agreement began on December 1, 2015, and continued until November 30, 2018, unless terminated earlier. The maximum amount to be paid by the county under the agreement, in the initial three-year term, was $884,195,500.00 unless there was a written amendment.

¶ 6    According to her complaint, when a county employee receives medical treatment under the county healthcare plan, HCSC pays healthcare providers for their services on behalf of the county. HCSC then presents a bill to the county for the services and the county reimburses HCSC for the amount of the bill plus a small administrative fee. However, Harper alleged that HCSC receives a further discount from service providers, which increases the income of HCSC. She alleged the service agreements allow HCSC to retain an undisclosed amount of "compensation" pursuant to separate financial "arrangements" between HCSC and the healthcare

providers. And because the terms of those separate arrangements are not disclosed to the county or its taxpayers, "the money taken from the public funds of Cook County [and] retained by HCSC for its services under its agreements with Cook County as well as the method/record of the calculation and receipt of the total compensation is not disclosed to Cook County or to the taxpayer/public."

¶ 7      Harper alleged the service agreements are in derogation of state law and consequently void *ab initio* because they allow HCSC to receive additional, undisclosed compensation from healthcare providers. She alleged that article VIII, section I of the Illinois Constitution (general provisions regarding public funds), the Local Records Act (50 ILCS 205/3 (West 2020) (defining "public records")), the Counties Code (55 ILCS 5/6-24001 *et seq.* (West 2020)), and the common law of Illinois require that all agreements between a government unit and a private vendor for the expenditure of public funds must be approved by a prior appropriation of a specific amount of money and maintained as public records. She further alleged the county exceeded its statutory authority in entering the service agreements "because they fail to disclose the details and amount of that [additional] compensation in the public record."

¶ 8      Harper claimed standing to bring a taxpayer action because she and her fellow taxpayers pay the cost of the county's self-funded employee healthcare programs. She sought restitution from HCSC based on claims for unjust enrichment, assumpsit, and an accounting.

¶ 9      Attached to her complaint was the latest service agreement between the county and HCSC, which provided it was authorized by the Board of Commissioners in 2015:

> "This Agreement is made and entered into by and between the County of Cook, a public body corporate of the State of Illinois, on behalf of Office of the Chief Procurement Officer hereinafter referred to as 'County' and Blue Cross and

Blue Shield of Illinois ("BCBSIL"), a division of Health Care Service Corporation, *** pursuant to authorization by the Cook County Board of Commissioners on October 28, 2015, as evidenced by Board Authorization letter attached hereto as Exhibit 11."

¶ 10　　In count I for unjust enrichment, Harper alleged the service agreements are void *ab initio* because "of the law prohibiting a private vendor and a unit of local government from entering into any agreement that does not limit the payments to be made to the vendor to those amounts fully disclosed." She claimed the county breached its duty to comply with state law "prohibiting a public entity or official acting on behalf of such an entity from entering into such an agreement." And HCSC has a similar duty to comply. She alleged that taxpayers are obliged to replenish the public funds for the loss of the payments made to HCSC. In counts II (assumpsit) and III (accounting), she alleged the county "paid sums to HCSC that HCSC was not legally entitled to receive," and "there is no record of the actual amount paid to HCSC for its alleged services."

¶ 11　　HCSC filed a combined motion to dismiss Harper's complaint pursuant to section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2020). HCSC sought dismissal under section 2-615 arguing Harper failed to plead a legally cognizable taxpayer action. 735 ILCS 5/2-615 (West 2020). HCSC sought dismissal under section 2-619(a)(9) arguing that Harper has no standing to pursue a taxpayer action, and where the county is the real party in interest, only the State's Attorney is authorized to assert such claims on behalf of the county. 735 ILCS 5/2-619(a)(9) (West 2020). HCSC attached a copy of its service agreement with the county. Exhibit 11, entitled "Board Authorization," details the specific amount of money proposed for the contract and the Board's request for authorization to enter the contract.

¶ 12    HCSC noted that the county is well aware of the discount it receives from providers and this discount was contemplated in the contract. HCSC argued that Harper failed to allege any facts that explain how the constitutional, statutory, and common law grounds she cited relate to her claim that the service agreements are void. HCSC noted that the service agreement includes Exhibit 9, entitled "Claim Administrator's Separate Financial Arrangements with Providers," which applies to preferred provider organization (PPO) benefit plans. That exhibit provides that the county is not entitled to any differences between provider discounts and the applied average discount percentage:

> "The Employer acknowledges that in negotiating the service charges set forth in Exhibit 9, it has taken into consideration that the Claim Administrator may receive such payments, discounts and/or other allowances during the term of Exhibit 9 and that the service charges specified in Exhibit 9 reflect the amount of additional consideration expected to be received by the Claim Administrator in the form of such payments, discounts and/or other allowances in excess of the ADP as part of any Claim Settlement or otherwise except as such items may be indirectly or directly reflected in the service charges specified in Exhibit 9."

¶ 13    The county also filed a combined motion to dismiss, adding there was another case, 18 L 10842, pending between the same parties "for the same cause." The county acknowledged it was voluntarily dismissed without prejudice by Harper. But the county sought to avoid duplicative litigation if Harper changed her mind.

¶ 14    The trial court dismissed Harper's complaint with prejudice, finding she "has no cognizable, pecuniary interest in the case sufficient to provide individual taxpayer standing" and "does not have the legal authority to act on behalf of Cook County." In so finding, the trial court

agreed with HCSC that while the expenditure of public funds must be appropriated and disclosed, there is no basis in Illinois law for Harper's allegation that a private vendor must disclose its costs and profits to the county or its taxpayers.

¶ 15                                Analysis

¶ 16        HCSC and Cook County filed separate motions to dismiss Harper's complaint pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2020); *Carr v. Koch*, 2012 IL 113414, ¶ 27. That section allows parties to file combined motions to dismiss under sections 2-619 and 2-615. *Id.* A 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative defense like standing. *Harris, N.A. v. Sauk Village Development, LLC*, 2012 IL App (1st) 120817, ¶ 15. On the other hand, a section 2-615 motion to dismiss attacks the legal sufficiency of the complaint. *Carr*, 2012 IL 113414, ¶ 27. We review *de novo* the dismissal of a complaint pursuant to section 2-619.1. *Hampton v. Chicago Transit Authority*, 2018 IL App (1st) 172074, ¶ 19. In doing so, we may affirm the trial court's judgment on any basis in the record regardless of the grounds relied on by the trial court. *Marshall v. County of Cook*, 2016 IL App (1st) 142864, ¶ 14.

¶ 17                                Standing

¶ 18        The doctrine of standing ensures that issues are only raised by parties with a real interest in the outcome of the controversy. *Marshall*, 2016 IL App (1st) 142864, ¶ 14. A plaintiff must complain of some injury in fact to a legally cognizable interest to have the requisite standing to maintain an action. *Id.* The alleged injury must be: (1) distinct and palpable; (2) fairly traceable to the defendants' actions; and (3) substantially likely to be prevented or redressed by the relief sought. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). Where a motion to dismiss raises the affirmative defense of standing, a court accepts as true all well-pleaded facts in the complaint

and all reasonable inferences in the plaintiff's favor. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2019 IL App (1st) 180697, ¶ 21. A motion to dismiss will be granted only if the plaintiff can prove no set of facts that would support her cause of action. *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 14.

¶ 19        "Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint." (Internal quotation marks omitted.) *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1102 (2011) (quoting *Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1995)). The plaintiff, however, is not required to allege facts establishing standing; it is the defendants who have the burden to plead and prove the plaintiff's lack of standing. *Wexler*, 211 Ill. 2d at 22. "Thus, we must look to the allegations of the complaint to determine whether plaintiff had standing, and we must also determine whether defendants carried their burden in proving plaintiff lacked standing." *Law Offices of Colleen M. McLaughlin*, 2011 IL App (1st) 101849, ¶ 16.

¶ 20        Harper claims she has standing to bring a direct taxpayer action to challenge the service agreements between the county and HCSC. But the fact that Harper designates her action as a direct taxpayer action does not make it so; nor does it establish her standing in this litigation. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 495-96 (2005).

¶ 21        Taxpayers may have standing to sue, either directly in their individual capacity or derivatively on behalf of a local government unit. *Veazey v. Board of Education of Rich Township High School District 227*, 2016 IL App (1st) 151795, ¶ 24. "Direct" taxpayer actions are brought by individuals on behalf of themselves and others similarly situated, upon a common ground, and to seek relief from illegal or unauthorized acts of public bodies or officials, which are injurious to their common interests as taxpayers. *Scachitti*, 215 Ill. 2d at 493. Direct taxpayer

standing is a narrow doctrine allowing a taxpayer to challenge the misappropriation of public funds. *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 29. The long-established rule in Illinois is "that citizens and taxpayers have a right to enjoin the misuse of public funds, and that this right is based upon the taxpayers' ownership of such funds and their liability to replenish public revenues depleted by an allegedly unlawful government action." *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160 (1956).

¶ 22    On the other hand, taxpayer derivative actions are brought by taxpayers on behalf of a local governmental unit, to enforce a cause of action that belongs to that unit. *Scachitti*, 215 Ill. 2d at 494. The alleged injury is not personal to the taxpayers but impacts the governmental entity. *Id.*

¶ 23    For standing in a direct taxpayer lawsuit, a plaintiff must establish her "liability to replenish public revenues depleted by an allegedly unlawful government action." *Marshall*, 2016 IL App (1st) 142864, ¶ 15, citing *Barber*, 406 Ill. App. 3d at 1102. "Such taxpayers have a legally cognizable interest in their tax liability, their increased tax liability is a specific injury, and their injury is redressable by an injunction against the challenged governmental expenditure of tax funds." *Barber*, 406 Ill. App. 3d at 1102. Absent allegations that a plaintiff will be liable to replenish public funds improperly depleted, or some other pecuniary loss, a taxpayer has no legally cognizable interest in the outcome of a case to support standing. *Marshall*, 2016 IL App (1st) 142864, ¶ 16. This is the case here.

¶ 24    Harper alleged no specific facts showing such liability. In her complaint, Harper simply alleged that taxpayers like her are obliged to replenish the public funds for the loss of the payments made to HCSC. Her speculative, conclusory statement is insufficient to establish that she suffered an injury in fact. *Tarkowski v. Scott*, 79 Ill. App. 3d 787, 789 (1979). Harper must at

least show a concrete injury in fact, either occurring or imminent, to have standing to maintain this action. *Id.* Instead, Harper directs this court to no evidence showing that as a taxpayer she was, or will be, liable for increased taxes resulting from the alleged undisclosed compensation that HCSC received from healthcare providers. Under these circumstances, we can only conclude that Harper has no legally cognizable interest as a taxpayer in the outcome of this lawsuit. *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶ 20 (finding plaintiffs failed to establish standing where they did not show they were responsible for replenishing public revenues).

¶ 25    Harper maintains *Veazey v. Board of Education of Rich Township High School District 227* supports a determination that she has standing as a taxpayer because she alleged her liability "to replenish the public funds that Cook County misappropriated." Although factually distinguishable, *Veazey* generally supports our conclusion that Harper has no legally cognizable interest as a taxpayer in the outcome of this action.

¶ 26    In *Veazey*, the plaintiff filed a declaratory judgment action seeking a determination that the school board violated its anti-nepotism policy by reinstating a teacher whose husband was a board member and cast the tie-breaking vote. *Veazey*, 2016 IL App (1st) 151795, ¶ 1. The defendants moved to dismiss primarily asserting that no actual controversy existed to support a declaratory judgment action and the anti-nepotism policy lacked the force and effect of law. *Id.* ¶ 10. The trial court granted the motions to dismiss with prejudice. *Id.* ¶ 11. On appeal, the court observed the nature of Veazey's declaratory judgment claim fell directly within those cases recognizing a taxpayer's challenge to the wrongful depletion of public funds. *Id.* ¶ 25. The court noted Veazey's request for declaratory judgment did not assert a derivative claim on the board's behalf, nor could he sue derivatively on behalf of the district in the absence of statutory authority. *Id.* ¶¶ 26-27. However, the court also found Veazey failed to specifically plead that, as

a taxpayer, he has been or will be liable to replenish the school district's misappropriation of funds. *Id.* ¶ 34. "Because such allegations are absent, Veazey's [second amended] complaint is 'fatally defective.' " *Id.* The court remanded the cause to allow Veazey to amend his complaint for declaratory judgment to allege facts demonstrating his liability to replenish public funds used to pay for the teacher's reinstatement. *Id.* ¶ 37. Presuming Veazey properly amends his complaint, the court stated, the first element of a declaratory judgment action would be established. *Id.* ¶ 34

¶ 27        Notably, the court remanded the cause to allow Veazey to amend his complaint for declaratory judgment because the trial court did not address whether his complaint sufficiently pled facts supporting taxpayer standing. *Id.* ¶ 1. Here by contrast, Harper's complaint sought restitution from HCSC based on claims for unjust enrichment, assumpsit, and an accounting, remedies that belong to the county. However, the *Veazey* court's observation regarding the nature of the declaratory judgment claim falling within the realm of cases recognizing direct taxpayer actions does not excuse Harper's failure to specifically plead that, as a taxpayer, she has been or will be liable to replenish the public funds for the loss of the payments made to HCSC.

¶ 28        Although a motion to dismiss under section 2-619 admits well-pleaded facts, it does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. Nor does that motion admit the truth of any allegations in the complaint that may concern the affirmative matter raised in the section 2-619(a)(9) motion to dismiss. *Id.* Thus, Harper's conclusory factual allegation that taxpayers like her are obliged to replenish the public funds for the loss of the payments made to HCSC, does not establish her standing to pursue this action. *Schacht*, 2015 IL App (1st) 133035, ¶ 28 ("we do not believe that the plaintiffs in *this*

case, who claim they are asserting the matter as individual taxpayers and not as a derivative action, have alleged grounds to establish either (i) a direct injury that may be remedied or (ii) individual liability for the alleged depletion of funds intended for juvenile intervention programs").

¶ 29    We also find the defendants met their burden of proving that Harper lacked standing to sue as a taxpayer in this litigation. In support of its motion to dismiss, HCSC attached its latest service agreement with the county and noted Exhibit 9, entitled "Claim Administrator's Separate Financial Arrangements with Providers." Exhibit 9 expressly provides the county is not entitled to any differences between healthcare provider discounts and the applied average discount percentage. Moreover, the service agreement provides it was entered pursuant to authorization by the Cook County Board of Commissioners and evidenced by the Board Authorization letter attached as Exhibit 11. Under these circumstances, Harper can prove no set of facts that would support her allegation of taxpayer standing. And as the trial court correctly observed, while the expenditure of public funds must be appropriated and disclosed, there is no basis in Illinois law for Harper's allegation that a private vendor must disclose its costs and profits to the county or its taxpayers.

¶ 30    Given our determination that Harper lacks standing to maintain this action, we need not consider the other contentions raised by the parties. *Carr*, 2012 IL 113414, ¶ 52. Accordingly, we affirm the trial court's order dismissing Harper's complaint with prejudice.

¶ 31    Affirmed.